OPINION OF THE COURT
Daniel D. Leddy, Jr., J.
May a child who has run away from home in another State be properly adjudiciated a person in need of supervision (PINS) for the purpose of facilitating his or her return in accordance with the Interstate Compact on Juveniles? This critical issue is presented to the court on an undisputed statement of facts and calls into question the constitutionality of a procedure routinely used in dealing with runaway youth.
The respondent is a fifteen-year-old girl who resided with her father in Daytona Beach, Florida. The instant petition alleges that she "absconded from her father’s home” without his consent in January of this year. The respondent maintained that she did not wish to return home, implying at the same time that she would not be welcome there in any event.
On April 10, 1979, this court remanded the child to the Commissioner of Social Services for shelter care and a complete medical examination. This action was taken by the court in light of its firm belief that the Spofford Juvenile Center is an absolutely unacceptable detention facility for a child alleged to be a person in need of supervision. There is statutory authority to buttress this belief. (Family Ct Act, § 720, subd 3.)
When the respondent failed to return to court on the adjourned date, the Law Guardian moved to dismiss the petition while the Corporation Counsel requested a warrant for the girl’s arrest.
The instant petition, routinely used in runaway cases, is an inartistic masterpiece, a catalyst for confusion that would be laughable if it did not involve fundamental constitutional rights and the fragile emotions of helpless youth.
While containing the notation "runaway” in boldface *175 type, it has been assigned an "S” number, the designation given to a PINS petition. And although the wherefore clause prays that the respondent be adjudicated a person in need of supervision, it requests that she be dealt with in accordance with the Interstate Compact on Juveniles. This attempt to fuse two separate and distinct legal procedures fails miserably and spawns a petition that is insufficient on its face to afford relief under either.
A person in need of supervision is defined in subdivision (b) of section 712 of the Family Court Act. Any applicability to this case would require a showing that the child is "incorrigible, ungovernable or habitually disobedient and beyond the lawful control of parent or other lawful authority”. Clearly, a single act of running away from home does not make a child incorrigible, ungovernable or habitually disobedient. In fact, the courts have repeatedly held that a single act of any kind is insufficient, standing by itself, to sustain in PINS finding. (Matter of Raymond O., 31 NY2d 730; Matter of David W., 28 NY2d 589.) Moreover, running away from home, even if repeated several times, can justify no inference against the child absent proof that the child so behaved without just cause.
Such proof must be part of the petitioner’s case and be sustained beyond a reasonable doubt. This conclusion is inescapable in light of the extremely serious, quasi-criminal nature of the PINS proceeding which can lead to a substantial interference by the State in the affairs and liberty of the child. (Family Ct Act, §§ 744, 754; Matter of Richard S., 27 NY2d 802; Matter of Iris R, 33 NY2d 987.)
It is obvious, therefore, that this petition could not stand a challenge to its face even if the runaway act alleged occurred in New York State.
But here, the respondent was a resident of the State of Florida and allegedly ran away from her home in that State. Therefore, at the time of the act in question, there was absolutely no contact by any interested party, child or parent, with the State of New York.
If the child’s father in Florida or the State of Florida itself chose to utilize the specific procedures of the Interstate Compact on Juveniles, New York might have been justified in detaining the respondent. (See L 1955, ch 155, § 1 et seq.) But here, no such action was initiated. Under these circumstances, New York may not detain the respondent and charge her with *176 being "incorrigible, ungovernable or habitually disobedient” for an act committed in another jurisdiction any more than it could properly try her for a murder committed in that jurisdiction. The action taken by New York in this case was a clearly impermissible assault on the right of the respondent to travel unimpaired between the various States of the union. (See, e.g., State v Cutshall, 110 NC 538.) Thus, this application of the PINS statute to the respondent is unconstitutional, being in direct contravention of the privileges and immunities clause of the Fourteenth Amendment.
As Mr. Justice Douglas pointed out in his concurring opinion in Edwards v California (314 US 160, 178): "The right to move freely from State to State is an incident of national citizenship protected by the privileges and immunities clause of the Fourteenth Amendment against state interference.” (See, also, Twining v New Jersey, 211 US 78; Crandall v Nevada, 6 Wall [73 US] 35.)
Since the United States Supreme Court has held that children are "persons” under our Constitution (Tinker v Des Moines School Dist., 393 US 503, 511), they must be afforded their rights under the privileges and immunities clause, which extends to "all persons [emphasis added] born or naturalized in the United States, and subject to the jurisdiction thereof’. (US Const, 14th Arndt, § 1.) And yet, this court concedes that the applicability of these rights to children is not without limitation.
In his dissenting opinion in Wisconsin v Yoder (406 US 205, 243),* Justice Douglas points out that case law has recognized and acknowledged that children, in and of themselves, have certain constitutionally protectible interests. When they seek to exercise rights thereunder, these interests may conflict with those of other individuals asserting concurrent rights with regard to the same subject matter. In the context of the parent-child relationship, such a conflict is frequently the case.
While Douglas would hold that courts should engage in a process of balancing these competing interests, he also strongly affirms the principle that in such a process the child should be given an opportunity to be heard, before the State *177 intervenes and imposes its own conflict resolution. (Wisconsin v Yoder, supra, at p 244.) Even more significantly he contends that in matters affecting a child’s destiny, it is the child’s judgment, "not his parents’, that is essential if we are to give full meaning to what we have said about the Bill of Rights”. (Wisconsin v Yoder, supra, at p 245.)
Nevertheless, this constitutional perspective is not without qualification. In Douglas’ view, the child asserting his rights in opposition to his parent must be "mature enough to have [his contrary] desire respected”. (Wisconsin v Yoder, supra, at p 242.) In footnote 3 of his opinion, he suggests that this maturity first appears at age 14 and implies that only then would the presumption operate requiring, in the first instance, an equality of respect towards child and parent in their formulation and implementation of life-directing decisions.
Under Douglas’ analysis of this potentially conflictual triad of parent, child and State, the exercise of Family Court jurisdiction is therefore constitutionally prohibited. The only factual allegations contained in the instant petition are that respondent is a minor, whose family resides in Florida, and that she was observed in New York unaccompanied by a parent. The remaining allegation that she has run away from home, without either parental consent or just cause, is nothing more than a presumption. It is this presumption which the court now holds to be constitutionally impermissible, since on this record its prima facie application to respondent would unreasonably and unnecessarily prejudice her right to travel under the privileges and immunities clause. To put it simply, if a child has a constitutionally protectible interest under section 1 of the Fourteenth Amendment to the United States Constitution, and said child is "mature enough to express potentially conflicting desires” (Wisconsin v Yoder, supra, at p 242), the State cannot merely presume, without some factual showing, that the child’s seemingly independent acts and/or judgment are without parental consent, or, absent such consent, that they are, in the first instance, wrong.
In addition to this holding under the privileges and immunities clause, the court also finds that New York cannot justify this PINS petition by focusing on the respondent’s dependent status in this State apart from the act committed in Florida. To subject the respondent to the stigma and legal consequences of a PINS adjudication based solely on her status in this State as a dependent child would constitute *178 cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution. (Cf., e.g., Robinson v California, 370 US 660.)
Accordingly, the instant petition is dismissed and the foregoing is deemed the final decision and order of this court under the above-captioned matter.

 It is necessary to consider the dissent since Justice Douglas alone reached the question of the competing interests of parent and child which is at issue in this decision. (See majority opn in Yoder, supra, at p 231; see, also, dissenting opn, at p 243.)